## JONATHAN HUNT & another *vs.* THOMAS H. ROYLANCE & others.
## THOMAS J. BADNALL & another *vs.* THE SAME.

A party in order to rebut the effect of his declarations and admissions, cannot show contrary declarations made at a different time, and in the absence of the adverse party; although such declarations were connected with acts and circumstances which, of themselves, unaccompanied by the declarations, would not tend to prove the matter in issue.

The manner of keeping the books of a partnership, and the fact that a credit of a certain sum as a salary to an alleged partner was entered on such books, should be shown by the books themselves, unless their absence is satisfactorily accounted for.

THESE two actions were tried by consent to the same jury. They were both actions brought to recover the contents of the promissory notes set forth in the writs respectively. The notes were signed in the firm name of Roylance, Briggs, and company. Roylance and Briggs were defaulted, and B. H. Strobridge alone defended; and the only question was whether Strobridge was a partner with the other defendants.

At the trial in the court of common pleas, to prove that he

was such partner, the plaintiffs introduced in evidence the declarations of Strobridge to two clerks employed by the firm.

The defendant called as a witness William C. Locke, who testified, that Roylance and Briggs were partners in Boston; that their business was a general commission business; that the witness made arrangements to go to Springfield to take charge of their business there, and that he was the head clerk and had the general charge of the business there; that he went on the 4th day of September, 1849; that the business there was the dry goods retail business, which was at first conducted under the firm of Briggs and company; that on the 24th day of September, of the same year, they moved into a new store, and that on that day a new sign was put up with the name of Roylance, Briggs, and company, upon it, under which firm the business was conducted. Strobridge came there the same day.

For the purpose of explaining evidence which had been introduced by the plaintiffs, tending to prove that the conduct and duties of the defendant from the time he went into the store, were more of a partner than of a clerk, the defendant offered to prove by this witness that an agreement was made at or about the time, between Briggs and Strobridge, that he, Strobridge, should have a salary, and might, if he wished, subsequently become a partner. This was objected to by the plaintiffs as not competent, but *Wells*, C. J. overruled the objection and admitted the testimony; and the witness testified that an agreement was made that Strobridge might come to learn the business. If he liked it, he was to go in as a partner; till he did so, he was to be on salary. Witness did not then know what the salary was, and not until the books were settled.

The defendant then offered to prove that on a certain occasion, an account of stock was taken, and that the said Strobridge was paid a certain salary. This was objected to by the plaintiffs. The presiding judge overruled the objection, and admitted the testimony. The witness then was permitted to state, that in the latter part of February, 1850, an account of stock was taken, and that Mr. Strobridge was paid $400

per year, and it so appeared on the books, which books were not produced ; and that the settlement was made in the witness' presence. On cross-examination, on this point, he subsequently stated that nothing was paid to Strobridge at the time, but that the account was settled, and the balance was carried to new account. To this evidence, the plaintiffs objected, as not competent; but the judge admitted the same.

The plaintiffs introduced evidence tending to prove that on various occasions, the defendant had stated that he was a partner, or interested in the concern of Roylance, Briggs and company. To meet this, the defendant offered to prove by the same witness, that on another occasion, when neither of the plaintiffs, nor the two witnesses called by the plaintiffs, were present, a lease was brought to the store of Roylance, Briggs and company to be executed, by a Mr. Walker, the owner of the store; and that Mr. Strobridge declined to execute the same, on the ground that he was not a partner. This was objected to by the plaintiffs, but the judge overruled the objection and admitted the evidence. The witness then stated that in March, 1850, soon after an addition was made to the store—but he could not be positive as to the time—witness was present with Strobridge, Walker, and Briggs, in the store. Mr. Walker brought in a lease. Strobridge did not sign it. The question was then put: "Did Strobridge refuse to sign the lease?" This was objected to, and the objection was overruled. The witness answered, " He did." The question was then put: "What was it said to be ?" This was objected to, and the objection was overruled. Witness answered, " A lease." " Of what ?" This was objected to and ruled in. The witness answered, " I don't know what it was. He was asked to sign a lease of the store which we occupied." This was objected to, but admitted. The question was then put : " What did Strobridge say ? " This was objected to, but admitted. The witness answered, " that he was not a partner in the firm of Roylance, Briggs and company," and he did not sign the lease.

The defendant then offered to prove that upon another occasion, the witness went with Briggs to the office of Henry Morris, Esq. an attorney at law, to have a writ made on a

demand in favor of Roylance, Briggs and company, and that
directions were left to have the writ made; that soon after a
messenger came from Mr. Morris to their store, and inquired
who were the company of Roylance, Briggs and company;
that this was asked of Mr. Strobridge, and that Mr. Strobridge
said he was not, and that this was in the presence of Briggs,
this witness, and Strobridge. This was objected to, but
admitted by the judge; and the witness stated that it was so,
and that Strobridge was at the desk, and when the question
was put to him, answered, "I am not." It did not appear
that either of the plaintiffs or either of the witnesses called by
them were present at this time.

To meet the position of the plaintiffs, that the change in the
sign at the time Strobridge went into the store, tended to
prove that Strobridge then went in as a partner, the witness,
upon being interrogated by defendant, further testified, that
he, the witness, had the sign painted for Roylance, Briggs and
company; that witness had his directions from Mr. Briggs, in
regard thereto. The witness was then asked, "What reason
did Briggs give you for having the firm changed?" This was
objected to, but was admitted. The witness answered, "That
the old firm of Briggs and company had not done well, and he
thought if the firm was changed, it would do better as a
branch of an importing house." Neither the plaintiffs nor
either of the witnesses called by them were present at the
time.

The plaintiffs offered evidence that the defendant Strobridge
had at one time been in the habit of drawing money from
the bank by signing the company's name. To meet this evi-
dence, the defendant offered to prove by the same witness that
in the month of October or November, 1849, after the witness
had recovered from a fit of sickness, the witness ascertained that
the defendant Strobridge had opened an account in the name
of the firm of Roylance, Briggs and company, at the Agawam
Bank, and that witness saw him signing a check in the name
of the firm; that witness told him, Strobridge, that it was not
right; that it would be a forgery, if he was not a partner, and
that he would make himself liable as a partner; that no check

was afterwards signed by the defendant Strobridge, and that the bank account was soon after changed to the name of the witness. This was objected to, it not appearing that either of the plaintiffs or the witnesses called by them were present; but the objection was overruled and the testimony admitted. The witness then testified that about 1st of November, 1849, he saw Strobridge sign the name Roylance, Briggs and company, to a check on the Agawam Bank. Witness told him that it was wrong; that he had no right to sign that name unless he was a partner, and that he would be holden if he did so. Strobridge said that he was ignorant; that he did not know that it was wrong, and that he was not a partner; that he had signed the firm name at the bank when he opened the account; that the bank account was immediately changed to W. C. Locke, and the balance transferred by a check in the name of Roylance, Briggs and company, drawn by Strobridge, and that after that the witness drew the checks. All this was objected to, but ruled in.

To show the improbability that the defendant Strobridge would enter into partnership with Roylance and Briggs, the defendant Strobridge offered to prove by the same witness that the firm of Roylance, Briggs and company, was insolvent when Strobridge went into the store; and the witness had so told Strobridge on his inquiry and a conversation being had on the propriety of his joining the firm. This was objected to, but the objection was overruled and the testimony admitted, it not appearing that either of the plaintiffs or the witnesses called by them were present. The witness then testified that he had several conversations with the defendant on that subject. The first was in November, 1849; that he advised him not to go into the firm, and told him that he thought the firm was insolvent.

The jury returned a verdict for the defendants in each case, and the plaintiffs excepted to all the aforesaid rulings.

*A. H. Fiske*, for the plaintiffs.

*J. Atkinson*, for the defendant Strobridge.

BIGELOW, J. The single question at issue between the parties in these actions was, whether one B. H. Strobridge,

one of the defendants, was a copartner with the two other de-
fendants, Briggs and Roylance, at the time the notes declared
on were given and signed with the names of Roylance, Briggs
and company. To maintain this issue on their part, the plaintiffs
offered in evidence the declarations of said Strobridge, made
on several different occasions to two clerks in the employment
of the firm. For the purpose of rebutting and controlling this
evidence, the defendant Strobridge offered evidence to prove
his own declarations on the subject of the partnership and his
connection therewith, made on other occasions than those
testified to in behalf of the plaintiffs, and when neither the
plaintiffs nor their witnesses were present. These statements
were objected to by the plaintiffs, but were admitted, and this
forms one of the principal grounds of the exceptions in the
present case. It seems to us that this evidence was incompe-
tent, on the familiar principle that a party cannot be allowed
to prove his own declarations in support of his own case. The
defendant had a right to prove any statements of his own,
which made part of those offered in evidence by the plaintiffs.
He could explain and contradict any conversation or declara-
tion which had been first proved against him by the plaintiffs,
because such evidence tended directly and legitimately to con-
trol the case made out against him by the plaintiffs. But
beyond this, he could not go. His own admissions. not offered
in evidence against him, had no legal tendency to control the
case proved on the other side. To show that a man denied
being a member of a copartnership to A. to-day, does not
prove or in any way tend to show, that he did not admit that he
was a member of the firm to B. yesterday. It is simply an
admission in his own favor, having no bearing on the admis-
sion proved against him. Nor does it make such testimony
any the more competent or relevant, because a party seeks
to couple it with independent acts and circumstances, not
proved on the other side, and which, of themselves, unaccom-
panied by the declarations of a party, would not tend to prove
the matter in issue. This would be a mere evasion of the
rule. The fact or circumstance being of itself immaterial,
cannot be made important or relevant by adding to it the

declaration of a party in his own favor. These familiar principles dispose of several of the exceptions taken at the trial to the admission of evidence. The declarations of the defendant at the time a lease of the store was brought to him to be signed; the conversation relative to the parties to a writ made in the name of the firm and the conversation with the witness concerning the insolvency of the firm, were all incompetent, and should have been excluded.

The testimony relative to the manner of keeping the accounts between Strobridge and the firm, in the books, and the fact that a credit of a certain sum, as a salary to said Strobridge, was entered on said books, were also incompetent, because they were attempted to be proved by secondary evidence. The defendant should either have produced the books or accounted for their absence.

The remaining objections taken to the admission of evidence, are not tenable. They had a legitimate tendency to disprove and control the facts and declarations relied on by the plaintiffs, and were rightly admitted.

*Exceptions sustained.*